WILLIAM B. DAYTON, APPELLANT AND RESPONDENT, v. WILLIAM A. PARKE AND ANOTHER, RESPONDENTS AND APPELLANTS.

*Charter-party — liability of the consignee of a cargo, for freight and demurrage — delay in unloading caused by prior occupation of the dock — "customary dispatch" — offer of judgment — costs.*

Where a charter-party of a vessel for the carriage of a cargo, made between the owner of the vessel and the consignor of the cargo, provided for the payment of freight upon proper delivery, and on its arrival at the dock designated by the consignor, at the port of destination, the consignee was notified thereof and made no objection, and after a delay, caused by the prior occupation of the dock by other vessels, the cargo was discharged, and the consignee received the inspector's certificate of such discharge, and accepted the same, but thereafter refused to accept the bill of lading, by which he was to pay the freight as per charter-party:

*Held,* that the consignee, being *prima facie* owner of the cargo, was liable to the owner of the vessel for the freight, as a matter of law, under the undisputed facts of the case.

Under a charter-party, providing for "customary dispatch" in discharging the vessel, and for the payment of demurrage for each day's detention of the vessel by default of the consignor or agent, a right to demurrage accrues for a delay in discharging the cargo caused by the fact that the wharf selected by the consignor was occupied by other vessels which had a prior right to unload there.

Where the consignee of the cargo, in such a case, is also the owner thereof, he is liable to the owner of the vessel for such demurrage.

The term "customary dispatch" in discharging a cargo, in a charter party, means that a berth will be provided where the vessel can unload as soon as she is ready to deliver cargo and the usual dispatch of persons ready to receive the cargo.

Where the complaint stated two causes of action, one for freight and one for demurrage, and the defendant made an offer of judgment for an amount equal to the claim for freight, and a judgment was obtained by the plaintiff for the claim for freight and six cents on the claim for demurrage:

*Held,* that the defendant was not entitled to costs.

APPEALS by both the plaintiff and the defendants, respectively, from a judgment, entered in the office of the clerk of Suffolk county, after a trial, at the Suffolk County Circuit, on the 13th day of September, 1892, and from the respective orders denying their respective motions for a new trial, entered in said clerk's office November, 1892, the plaintiff's appeal being limited to that part of the judg-

ment which directs that the plaintiff recover on the cause of action for demurrage the sum of six cents ; also appeals by the defendants from two orders, one entered in said clerk's office on the 18th day of November, 1892, denying their motion to modify the verdict, and, the other, denying their motion to disallow the plaintiff's bill of costs and to direct the taxation of the defendants' costs, entered in said clerk's office on the same day.

The action was brought by the plaintiff, as master, part owner and managing owner of the schooner J. H. Parker, for himself and the other owners, against the defendants, as consignees of the cargo of the vessel, based upon a charter-party made between the captain of the vessel, acting for the owners, and Mallonee & Co., of Charleston, S. C. The charter-party specified the rate of freight and made the "freight payable upon proper delivery of cargo," and contained provisions for demurrage. The complaint stated two separate causes of action, one for freight, the other for demurrage.

At the close of the testimony the defendants moved for the direction of a verdict in their favor. . This motion was denied and the defendants duly excepted. The plaintiff moved for the direction of a verdict in his behalf. The defendants thereupon moved for leave to go to the jury on the question whether the railroad ties in suit had not been sold by them to the Long Island Railroad Company before the arrival of the schooner J. H. Parker at the port of New York in June, 1891. The defendants' motion was denied, and they duly excepted. The court then granted plaintiff's motion and directed a verdict in his favor and against the defendants upon the cause of action for freight for $1,667.55, with interest from July 12, 1891, and upon the cause of action for demurrage for six cents. The defendants duly excepted to this direction.

Costs having been taxed in favor of the plaintiff, judgment was entered on the verdict as directed, together with costs to the plaintiff. The plaintiff thereupon appealed to the General Term from so much of the judgment as directed the recovery of six cents on the cause of action for demurrage, and the defendants appealed from the judgment generally.

At the taxation of costs the defendants presented a bill of their costs, claiming that, as they had made an offer of judgment for the claim for freight, they, and not the plaintiff, were entitled to costs

under section 738 of the Code of Civil Procedure. Taxation of their costs was, however, refused, and those of the plaintiff were taxed and allowed.

*Thomas J. Ritch, Jr.*, for the plaintiff.

*Edward M. Shepard*, for the defendants.

BARNARD, P. J.:

The plaintiff represents the owners of the schooner J. H. Parker. On the 19th of May, 1891, the captain of the vessel, acting for the owner, made a contract with Mallonee & Co., of Charleston, S. C., to carry a cargo of cross ties from Charleston to the Long Island Railroad Dock, Hunters Point. The cargo, when loaded, was consigned to the defendants. On the 23d of June, 1891, the vessel arrived at the dock in question, and reported her arrival to the defendants. On the twenty-ninth of June, the vessel began unloading, and finished July 1,.1891. The time consumed before the unloading commenced was occasioned by the fact that other vessels with cargoes for the dock had arrived before the plaintiff's schooner, and thereby had a right to unload in the order in which they came. Under these facts, there is no defense to the claim for the.freight. The consignee is *prima facie* the owner. (*Thompson* v. *Fargo*, 49 N. Y., 188.)

Not only was the cargo consigned to these defendants, but they were notified before delivery, and made no objections. They received the inspector's certificate that the cargo was discharged and accepted the same, and were willing to pay the freight. The defendants refused the bill of loading sent them. By its terms the consignees were to pay the freight as per charter-party. The defendants, under all the evidence wholly uncontradicted, made themselves iable for the freight, as matter of law.

By the terms of the contract for carriage, the vessel ·was to deliver the cargo at a particular dock. She was compelled to be idle for lack of opportunity to unload at that dock. Is the plaintiff liable for demurrage ? By the charter, it is provided that " for each and every day's detention by default of said party of second part (consignor), or agent, fifty-two dollars shall be paid by said party of the second part, or agent, to said party of the first part, or agent." The contract in respect

to unloading is expressed by the words " customary dispatch," which have a definite meaning by long usage, and by a series of decision, thereunder. Customary dispatch means a berth where the vessel can unload as soon as she is ready to deliver cargo, and the usual dispatch of persons who are ready to receive cargo. Unless there is some local reason to avoid this contract so construed, the plaintiff is entitled to recover for the six days. The charterer who selected the wharf was bound to be ready to receive, and it is no defense to the claim for demurrage that the wharf selected was occupied when the plaintiff's vessel arrived. The consignee is liable for the demurrage as well as for the freight. He is the *prima facie* owner, as has been stated. (*Scholl* v. *Albany, etc., Iron and Steel Co.,* 101 N. Y., 602.)

The evidence further shows that they were the real owners and had agreed to sell to the Long Island Railroad Company, they are, therefore, liable for the demurrage. The claim for the loss of time, after the unloading commenced, is a question for the jury. It is not proven that proper dispatch was not given so absolutely that a court can fix the amount of the demurrage in this respect. The plaintiff is entitled to six days' demurrage, at fifty-two dollars a day, and all beyond that must be established by a jury.

The defendants made an offer in the action. The complaint stated two causes of action. One for the freight and one for the demurrage. The offer was for an amount equal to the claim for freight. The judge allowed the claim for demurrage at six cents. The offer was not more favorable than the judgment. In the view we take of the claim for demurrage, the judgment should have been for a larger sum than the nominal amount rendered.

The taxation was, therefore, right and the order should be affirmed, with costs and disbursements.

PRATT, J., concurred.

Judgment modified in accordance with opinion. Order to be settled by Justice BARNARD.